LAW OFFICES

# BENNETT M. EPSTEIN

100 LAFAYETTE STREET

NEW YORK, N.Y. 10013

(212) 684-1230

TELECOPIER (212) 571-5507

VIA ECF

April 30, 2013

Hon. Kenneth M. Karas
United States District Judge
Southern District of New York
U.S. Courthouse
300 Quarropas Street
White Plains, NY 10602

                                  Re: <u>United States v. Tyrone Hall</u>
                                  12 Cr. 481 (KMK)

Dear Judge Karas:

SENTENCING MEMORANDUM

      Tyrone Hall is before the Court for sentencing on his conviction by guilty plea for conspiracy to distribute relatively small amounts of "crack" cocaine based upon a series of four hand-to-hand sales he made to an undercover officer at the request of someone who turned out to be a government informant. The informant, a friend who Tyrone knew as "Yoda", asked Tyrone to obtain drugs for him and offered him a "commission" for doing so. Tyrone knew the owner of the drugs, someone named "Jose", and had obtained drugs for "Yoda" previously at a price of $30 per gram, also getting a "commission" from the source and therefore making a small profit on both ends of approximately $80 on a $300 transaction. Three of the undercover sales took place during a two-week period in January, 2012, followed by a single subsequent sale in June, 2012. The smallest sale involved 10 grams and the largest was the last, at 26 grams. Altogether, Tyrone's profit was less than $350.

      When Tyrone was arrested pursuant to a warrant, the police also had a search warrant for the place where he was living with Shantel Crawford as well as his son and her daughter, and recovered approximately $4300 in cash and some drug paraphernalia. The cash was in a Chase bank envelope and belonged to Shantel. It was actually returned bail money from Yonkers City Court, which Shantel had posted for him in a case that was dismissed and sealed because he was "the wrong man".

      Since the drug amounts in this case aggregated to in excess of 28 grams of "crack", Mr. Hall faces an already stiff mandatory statutory minimum of 60 months pursuant to

21 U.S. Code 841 B(1) (b).  However, his criminal record is extensive at Criminal History Category VI and his Sentencing Guidelines range is 92-115 months imprisonment.

      Because we believe that Mr. Hall has led an extremely difficult life, because his criminal history is less serious, on careful examination, than it would otherwise seem, and because he appears, certainly to the undersigned, to be a meek, laconic individual who has never advocated for himself, we ask the Court to go below the guidelines pursuant to 18 U.S. Code Section 3553(a) and impose the mandatory minimum.  We also point out some extenuating family circumstances, which involve his raising and attempting to support his high school age son as a single father, that contributed to the financial need that motivated the instant crime and which we hope will lead to leniency for Mr. Hall.

      Tyrone Hall was born in 1979 and is 33 years old.  He is the youngest of four siblings which included his brother, Anthony Stewart, a Marine who was killed in Desert Storm in 1991, when Tyrone was 12 years old.  After that tragic event, his mother turned to drugs and the family structure disintegrated.  He spent his teenage years in a group home in Warwick, NY.  He then went to live with his father and his father's girlfriend in Pennsylvania, but their unstable relationship led to periods of homelessness for Tyrone during his high school years.  Although he attended school, even as a homeless student, he never was able to finish and get a high school diploma, and this had an adverse affect upon his future job prospects.  The only trade he ever learned was cutting hair, which he learned from an uncle, and which he continued to do in Yonkers, interrupted several times by prison or jail terms until his arrest in this case. When his father and the father's girlfriend split up for good in 1999, Tyrone was officially homeless at the age of 20.

      During those earlier years, Tyrone worked at MacDonalds' and at an 84 Lumber store and at a gas station in Pennsylvania.  He was also arrested for the first time at the age of 17 for stealing a coat in Pennsylvania and the next year for "Receiving Stolen Property" a/k/a sleeping in a car in Trenton, New Jersey in 1998.

      Although no criminal history points are assessed for the above matters, the issue of being homeless and sleeping in cars has more serious implications in terms of his criminal history, since there were two more such instances later in Westchester, the first one a felony and the second a misdemeanor in 2000 and 2005, respectively, which result in the imposition of 5 criminal history points here.

      While Mr. Hall's criminal history shows a number of additional convictions followed by parole violations for each of the new arrests, and is somewhat difficult to "roadmap" because of the reverse chronological order in which they are portrayed the Pre-Sentence Report, it is worth noting that each new arrest wound up in severe consequences because of the fact he was re-arrested while under supervision.  They also frustrated sincere attempts to improve his employability and get the start in life he never had.

      Thus, his felony sleeping-in- a-car arrest for possession of stolen property in 2000 landed him a sentence of 1 to 3 years imprisonment.  When he was paroled in 2002, he got

himself a job cutting hair in Yonkers. This prison term was then extended to the maximum twice by arrests which constituted parole violations for possession of a weapon (which he had found) in 2002 and possession of a controlled substance in 2003. When he was finally released from these prison terms, he tried getting into trade school but financial aid was denied because of his record. So he resumed cutting hair in Yonkers.

In May, 2005 he sustained another misdemeanor arrest and received 90 days, after which he again went back to cutting hair. But he was arrested again in 2006 for felony possession of "crack" and did three years in State Prison. When he was paroled this time, he applied for intensive job training by the Department of Social Services and wound up with a job doing inventory, but this ended when his parole was revoked again by an arrest for misdemeanor assault in an incident he describes as attempting to prevent an assault upon two females.

In the midst of all of this, Tyrone had entered into a stable relationship with Shantel Crawford and her (then) infant daughter, Sierra, and began living with them. He then took custody of his son, Terell Hall, to live with them. Terrell had been living in unstable circumstances with Terrell's mother, who had a number of other children by different men. Tyrone "rescued" Terell and helped Shantel raise both children, and admits that he committed crimes in order to support them. Sierra, now 13, goes to private school. Terell, now 17, is a junior at Gorton H.S. in Yonkers and a starting wide receiver on the football team. He hopes to get a college scholarship. Shantel visits Tyrone in jail each week and both Terrel and Sierra visit him twice a month.

We believe that in this case the nature and circumstances of the offense and the history and characteristics of the defendant warrant a sentence below the guidelines pursuant to 18 U.S. Code 3553 (a) (1). While it is undeniable that there were many bad choices made by Tyrone along the way, we think a direct line can be drawn between his brother being killed as a U.S. Marine, to the descent of his parents into crack and Tyrone into homelessness and related criminal behavior (stealing and sleeping in cars), to lack of education, a criminal record, and to his inability to gain a legitimate foothold in society in order to succeed a spouse and provider for his family. Other relevant factors should include the low-level of his criminal behavior in this case and the overly high criminal history category relative to the underlying crimes themselves. We therefore ask the Court to conclude that the 60 month mandatory minimum in this case provides adequate punishment under 18 U.S. Code 3553 (a) (2).

Finally, we respectfully ask the Court to recommend drug treatment for reasons summarized in the Pre-sentence Report, and also recommend designation by the Bureau of Prisons in the Northeast Region so that he can maintain contact with his family.

Very truly yours,

/Bennett M. Epstein

cc. Ilan Graff, Esq.
    Assistant U.S. Attorney